*FILED IN CHAMBERS*
*U.S.D.C. Atlanta*

*FEB 04 2010*

By: JAMES N HATTEN, Clerk

ANTHONY B. THOMAS

    Plaintiff,

v.

COBB COUNTY SHERIFF'S
DEPARTMENT; COBB COUNTY
DEPARTMENT OF CORRECTIONS; NEIL
WARREN (INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS COBB
COUNTY SHERIFF); COBB COUNTY
BOARD OF COMMISSIONERS; SAMUEL
OLENS (COBB COUNTY COMMISSION
CHAIRMAN); COBB COUNTY,
GEORGIA; AND WILLIAM "BILL"
HUTSON.

    Defendants.

CIVIL ACTION NO.

1:06-CV-1883-JEC

## ORDER & OPINION

This case is presently before the Court on defendant Bill
Hutson's Motion to Dismiss [63], defendants' Motion for Summary
Judgment [70], plaintiff's Motion for Leave to File Original
Deposition Transcripts in Paper Form [83], and defendants' Motion for
Extension of Time to File Reply [86]. The Court has reviewed the
record and the arguments of the parties and, for the reasons set out
below, concludes that defendants' Motion for Summary Judgment [70]
should be **GRANTED**, plaintiff's Motion for Leave to File Original

Deposition Transcripts in Paper Form [83] should be **GRANTED,** defendants' Motion for Extension of Time to File Reply [86] should be **GRANTED,** and defendant Hutson's Motion to Dismiss [63] should be **DENIED as moot.**[1]

## **BACKGROUND**

This is a race discrimination case. Plaintiff was hired by the Cobb County Department of Corrections (hereinafter the "Department") in 1990. (Defs.' Statement of Material Facts ("DSMF") [70] at ¶ 1.) Effective October 1, 2000, the Department was absorbed by the Cobb County Sheriff's Office. (*Id.* at ¶ 2.) Plaintiff subsequently accepted employment with the Sheriff's Office. (*Id.*) During plaintiff's employment with the Sheriff's Office, his performance was never in issue and his employment evaluations were favorable before July 28, 2002. (*Id.* at ¶ 4.)

On April 9, 2002, plaintiff's ex-wife Kimberly Thomas filed a Petition for Stalking and Temporary Protective Order in Cobb County Superior Court, in which she stated that on March 21, 2002, plaintiff

---

[1] Plaintiff has also filed a Motion for the Court's Order and Direction Regarding Filing a Sur-Reply to Defendant's Motion for Summary Judgment [93]. That motion is **GRANTED.** Plaintiff's motion is based on defendants' objection to plaintiff's response as untimely. Defendants' timeliness argument did not factor in the Court's summary judgment ruling, and the Court fully considered plaintiff's response in deciding defendants' motion for summary judgment. Accordingly, plaintiff should not file a sur-reply to defendants' motion.

2

had:

> Followed me to my friends['] house in Riverdale and blocked my car in the driveway with his car, was yelling obscenities [and] knocking on doors. On Sunday, April 7th, 2002, he stalked me to Riverdale again and kept driving by the house I was visiting. He also followed me to the gas station [and] threatened me.

(*Id.* at ¶ 7.) On April 9, 2002, a Temporary Protective Order ("TPO") was entered restraining and enjoining plaintiff from having contact with Kimberly Thomas and from coming within 500 yards of her person, home, or work. (DSMF [70] at ¶ 8.) Plaintiff informed his supervisor at the time, Colonel Alder, of the Stalking Petition and TPO. (*Id.* at ¶ 10.) The TPO was dismissed on July 21, 2002. (Pl.'s Resp. to DSMF [85] at ¶¶ 8-9.)

On July 28, 2002, plaintiff drove to the Sterling Highland Apartments, where Kimberly Thomas resided with the couple's three children. (DSMF [70] at ¶ 11.) There he encountered Kimberly Thomas and the children, as well as Earnest Hampton and his young son. (*Id.*) What happened next is disputed. Plaintiff claims that he simply asked his children to come with him for a previously scheduled visitation, and that he left the premises when the children indicated that they did not want to go with him. (Pl.'s Resp. to DSMF [85] at ¶ 11.) Plaintiff admits, however, that shortly after he left the premises, Kimberly Thomas called 911 and reported that plaintiff had pulled a gun and pointed it at Hampton. (*Id.* at ¶ 12.) The Cobb

3

County Police Department responded to the 911 call, and prepared an incident report accusing plaintiff of committing aggravated assault. (DSMF [70] at ¶ 13.)

On July 29, 2002, the Internal Affairs ("IA") division of the Cobb County Sheriff's Office began an investigation into the allegation that plaintiff had pointed a gun at Hampton. (*Id.* at ¶ 14.) As a first step in the investigation, IA investigators Allen Roberts and Morris Nix interviewed plaintiff about the incident. (*Id.* at ¶ 15.) Plaintiff stated that he did not have a weapon in his possession on the night in question, and that he did not display a weapon of any kind during his conversation with Kimberly Thomas and Earnest Hampton at the Sterling Highland Apartments. (*Id.*)

Plaintiff's statement was contradicted by statements from Kimberly Thomas and Earnest Hampton. (*Id.* at ¶¶ 16-17.) Thomas and Hampton both told the IA investigators that, upon confronting them in the apartment parking lot, plaintiff had become irate and started cursing, and then had pulled out his gun and pointed it at Hampton. (DSMF [70] at ¶¶ 16-17.) Plaintiff's minor daughters, Taylor and Jordan Thomas, subsequently provided statements that corroborated Thomas and Hampton's version of the events of July 28, 2002. (*Id.* at ¶¶ 19, 22.)

During the course of its investigation, IA conducted a polygraph examination of plaintiff. (*Id.* at ¶ 20.) Plaintiff was asked in the

4

examination if he had pointed a weapon at Hampton or made any false statements concerning the investigation. (*Id.*) The results of the examination indicated deception in plaintiff's responses to those questions. (*Id.* at ¶ 21.) Following the polygraph examination, plaintiff was placed on paid administrative leave pending the outcome of the internal investigation. (DSMF [70] at ¶ 24.)

IA ultimately concluded that plaintiff had pointed his weapon at Hampton without justification, in violation of the Sheriff's Office policy and procedures, as well as several provisions of state law. (*Id.* at ¶¶ 29-31.) IA also concluded that plaintiff had been untruthful during the investigation, in further violation of Sheriff's Office policy and procedures. (*Id.* at ¶ 32.) Colonel Bartlett issued a memorandum informing plaintiff that, based on the results of the IA investigation, Bartlett was proposing that plaintiff's employment with the Cobb County Sheriff's Office be terminated. (*Id.* at ¶ 34.)

Plaintiff had a disciplinary hearing on August 5, 2002. (*Id.* at ¶ 35.) The hearing was attended by the IA investigation team, as well as Chief Deputy Neil Warren. (DSMF [70] at ¶ 35.) Following the hearing, Warren informed plaintiff that his employment with the Sheriff's Office was terminated. (*Id.* at ¶ 36.) The stated reasons for Warren's decision were: pointing a pistol at another person and then lying about it. (*Id.* at ¶ 37.) Sheriff Hutson approved

5

plaintiff's termination. (Pl.'s Resp. to DSMF [85] at ¶ 38.)

Plaintiff subsequently filed this action. (Compl. [1] at ¶ 1.) In his complaint, plaintiff asserted claims against Cobb County and various Cobb County officials under 42 U.S.C. § 1981 and § 1983 for alleged constitutional violations and race discrimination in connection with his termination. (*Id.* at ¶¶ 47-51, 61-67, Am. Compl. [5] at ¶¶ 12, 21.) Plaintiff also alleged that, while he was employed by the Sheriff's Office, he was subjected to unlawful racial harassment in further violation of § 1981. (*Id.*)

Prior to submitting their answer, defendants filed a partial motion to dismiss plaintiff's complaint. (Defs.' Partial Mot. to Dismiss [3].) In their motion, defendants argued that plaintiff's § 1983 claims, and his § 1981 claims against the Cobb County defendants, were subject to a two-year statute of limitations. (*Id.* at 2-3.) Based on the allegations in the complaint, plaintiff was terminated on August 12, 2002. (Amended Compl. [5] at ¶¶ 27-28.) He did not file his complaint until nearly four years later, on August 11, 2006. (Compl. [1].) Thus, defendants argued that plaintiff's § 1983 claims, as well as his § 1981 claims against the Cobb County defendants, were time-barred. (Defs.' Partial Mot. to Dismiss [3] at 2.) The Court granted defendants' motion, relying on the Eleventh Circuit's decision in *Palmer v. Stewart County Sch. Dist.,* 178 Fed. Appx. 999, 1003 (11th Cir. 2006) (holding that a two-year statute of

6

limitations applies to all § 1981 claims that must be brought under
§ 1983). (Order [18] at 5-6.)

Plaintiff subsequently filed a motion to reconsider and a motion
for interlocutory appeal as to whether the Court correctly determined
that his § 1981 race discrimination claims against the Cobb County
defendants were barred by the statute of limitations. (Pl.'s Mot. to
Recons. [19] and Mot. for Interlocutory Appeal [28] and [29].)
Plaintiff did not cite any intervening case law or newly discovered
evidence in support of his motion to reconsider. (*Id.*) Instead,
plaintiff attempted to recast his claim against the Cobb County
defendants as a malicious prosecution claim, which would not have
accrued until the underlying criminal charges against plaintiff were
dismissed on September 20, 2004. (*Id.* and Amended Compl. [5] at ¶
29.) Because it was evident that plaintiff was improperly using the
motion to reconsider to assert a new theory of law, the Court denied
plaintiff's motion. (Order [26] at 4-5.)

In support of his motion for interlocutory appeal, however,
plaintiff cited the Eleventh Circuit's intervening decision in *Baker
v. Birmingham Bd. of Educ.,* 531 F.3d 1336, 1338-39 (11th Cir. June
25, 2008). In *Baker,* the Circuit Court held that a § 1981 claim
against a state actor is subject to the four-year statute of
limitations set forth in 28 U.S.C. § 1658, as opposed to the two-year
statute of limitations that is generally applicable to § 1983 actions

7

in Georgia. *Id.* The Eleventh Circuit noted its prior decision to the contrary in *Palmer*, but declined to follow *Palmer* because it was an unpublished decision. *Id.* at 1338. Applying *Baker*, the Court held that plaintiff's § 1981 race discrimination claims against the Cobb County defendants were subject to a four-year statute of limitations. (Order [32] at 4.) Accordingly, the Court vacated the portion of its Order dismissing those claims.

Following discovery, plaintiff agreed to dismiss several defendants from the case. (Consent Mot. [41].) The remaining defendants have now filed a motion for summary judgment as to plaintiff's race discrimination claims. (Defs.' Mot. for Summ. J. [70].) Defendant Hutson has also filed a second motion to dismiss plaintiff's claims against him. (Def. Hutson's Mot. to Dismiss [63].) Those motions, and several related motions, are presently before the Court.

## DISCUSSION

### I. **Plaintiff's Malicious Prosecution Claim**

Plaintiff suggests in his response to defendants' motion for summary judgment that he is still asserting a claim for malicious prosecution. (Pl.'s Resp. to Defs.' Mot. for Summ. J. ("Pl.'s Resp.") [85] at 4.) In its order on plaintiff's motion to reconsider, the Court noted that plaintiff had not even hinted at the existence of a malicious prosecution claim before filing his motion

8

to reconsider. (Order [26] at 5.) Absent a compelling reason for not raising it earlier in the litigation, the Court denied plaintiff's motion to reconsider its ruling dismissing any such "malicious prosecution" claim. (*Id.* at 6.)

The Court did not revisit this ruling in its order on plaintiff's motion for interlocutory appeal. (Order [32].) Indeed, the Court noted at the end of its order that, in its view, the only remaining claims were: (1) plaintiff's § 1983 claim against the Cobb County defendants for discrimination and retaliation in violation of § 1981; and (2) plaintiff's § 1981 claims for race discrimination and retaliation against Neil Warren and William Hutson, in their individual capacities. (*Id.* at 5.) The Court specifically invited either party to file a statement clarifying the remaining claims and parties, in the event that the Court's statement was inaccurate. (*Id.* at 6.) Neither party did so.

In short, the Court disposed of plaintiff's malicious prosecution claim in its initial order denying plaintiff's motion to reconsider. The Court never had occasion to reconsider that ruling, and there is no basis for doing so now. The Court will thus limit its discussion on summary judgment to plaintiff's § 1981 race discrimination and retaliation claims.

9

## II. **Plaintiff's § 1981 Discriminatory Termination Claim**

### A. **Summary Judgment Standard**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."" FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be "'no genuine issue as to any material fact,'" as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

10

AO 72A
(Rev.8/82)

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## B. Cobb County's Liability

Section 1983 "'provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.'" *Busby v. City of Orlando,* 931 F.2d 764, 771 (11th Cir. 1991). *See also, Webster v. Fulton County,* 283 F.3d 1254, 1256 (11th Cir. 2002) (noting that § 1981 is only enforceable against a state actor through § 1983). There are strict

11

limits on municipal liability under § 1983. *Grech v. Clayton County,*
335 F.3d 1326, 1329 (11th Cir. 2003). In particular, a municipality
may not be held liable under § 1983 on a *respondeat superior* theory.
*Id.* Instead, a municipality is only liable under § 1983 when it is
"actually responsible" for the violation at issue. *Id.* In order to
show that Cobb County is "actually responsible" for the violation of
plaintiff's rights under § 1981, plaintiff must present some evidence
of a county policy or custom of racial discrimination. *Id. See also*
*Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1307 (11th Cir.
2001)(holding same).

There are two methods by which to establish a county policy:
identify either (1) an officially promulgated county policy; or (2)
an unofficial custom or practice of the county shown through the
repeated acts of a final policymaker for the county. *Grech,* 335 F.3d
at 1329. Under either avenue, a plaintiff must show that the county
has authority and responsibility over the governmental function in
issue. *Id.* A plaintiff must also identify those officials who speak
with final policymaking authority for the county concerning the
allegedly unlawful or unconstitutional act. *Id.*

Defendants do not dispute that Sheriff Hutson, and arguably
Chief Deputy Warren, act as final policymakers for the Cobb County
Sheriff's Office. However, plaintiff cannot show that Hutson and
Warren are final policymakers for Cobb County. In fact, Georgia's

12

Constitution grants the state legislature, as opposed to the county government, the exclusive authority to establish and control a sheriff's powers and duties. *Grech,* 335 F.3d at 1332. *See* Ga. Const. art. IX, § 1. Interpreting this constitutional provision, the Georgia Supreme Court has explained that sheriffs are subject to the control of the Georgia legislature, and are not county employees. *Grech,* 335 F.3d at 1332 (citing *Bd. of Comm'rs of Randolph County v. Wilson,* 260 Ga. 482, 482 (1990)). With regard to hiring and firing deputies, in particular, the sheriff and his chief deputy derive their authority directly from the state, not from Cobb County. *See* O.C.G.A. § 15-16-23 ("Sheriffs are authorized in their discretion to appoint one or more deputies") and *Manders v. Lee,* 338 F.3d 1304, 1311 ("Sheriffs alone hire and fire their deputies. Deputies . . . are employees of the sheriff and not the county.").

A county "can never be liable under § 1983 for the acts of those [officials] whom [it] has no authority to control." *Grech,* 335 F.3d at 1331. Under Georgia law, counties do not exercise substantial control over a sheriff's personnel decisions. Consequently, for purposes of § 1983 liability, neither Sheriff Hutson nor Chief Deputy Warren qualifies as a "final policymaker" for Cobb County. *Id.* Plaintiff does not point to any other discriminatory custom or policy of Cobb County that might have contributed to his allegedly unlawful termination. Thus, even assuming that plaintiff's rights under §

13

1981 were violated, there is no basis to impose liability for that violation on Cobb County. Accordingly, both of the remaining Cobb County defendants are entitled to summary judgment on plaintiff's claims.[2]

## C. Liability of the Individual Defendants

Plaintiff seeks to hold each defendant personally liable under § 1981 in his individual and official capacity. As to their official liability, the Eleventh Circuit has held that "when an officer is sued . . . in his or her official capacity, the suit is simply 'another way of pleading an action against . . . the [municipality] of which an officer is an agent.'" *Busby,* 931 F.2d at 776. Consequently, it would be redundant to allow plaintiff to sue both the County and the officers in their official capacity. *Id.* The individual defendants are thus entitled to summary judgment on plaintiff's claims against them in their official capacity.

As to their individual liability, plaintiff's § 1981 discriminatory termination claim is governed by the same standards that govern a Title VII race discrimination claim. *Standard v. A.B.E.L. Serv., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998).

---

[2] Plaintiff's claims against the Cobb County Board of Commissioners also duplicate his claims against Cobb County, and are redundant. *See Abusaid v. Hillsborough County Bd. of County Comm'rs,* 405 F.3d 1298, 1302 (11th Cir. 2005)("The Board is simply the County's governing body and therefore cannot be sued separately.")

14

Plaintiff has not produced any direct evidence that his termination was motivated by race discrimination. Accordingly, his claim must be analyzed under the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Under this framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once plaintiff meets that burden, defendants must "articulate some legitimate, nondiscriminatory reason" for their employment decision. *Id.* If defendants can legitimately explain their rationale, plaintiff must present some evidence that the proffered reason is a pretext for discrimination. *Burdine*, 450 U.S. at 253-54.

### 1. There is insufficient evidence in the record to show a *prima facie* case of race discrimination.

To establish a *prima facie* case of race discrimination, plaintiff must present some evidence that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified to do the job in question; and (4) he was either replaced by a white employee, or treated less favorably than a similarly situated white employee. *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). It is undisputed that the first three requirements are met. However, plaintiff has not presented

15

sufficient evidence on the fourth requirement to survive summary judgment.

Plaintiff's claim is based on a disparate treatment theory. (Pl.'s Resp. [85].) Plaintiff concedes that he was terminated following an investigation during which IA concluded that he unlawfully and without justification pointed a gun at Earnest Hampton, and then lied about the incident. (*Id.*) However, plaintiff claims that white officers who engaged in similar misconduct were treated more favorably. (*Id.* at 17-25.)

In order to prevail on his disparate treatment theory, plaintiff must identify a white employee to which he is "similarly situated in all relevant respects." *Knight v. Baptist Hosp. of Miami,* 330 F.3d 1313, 1316 (11th Cir. 2003). To prevent courts from second-guessing an employer's reasonable decision, "[t]he comparator must be nearly identical to the plaintiff." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004). In a termination case, in particular, the plaintiff must show that the misconduct for which he was discharged was "nearly identical" to that engaged in by an employee outside the protected class who was retained. *Rioux v. City of Atlanta,* 520 F.3d 1269, 1280 (11th Cir. 2008). "Misconduct merely 'similar' to the misconduct of the [terminated] plaintiff is insufficient." *Id.*

The closest comparator to plaintiff is Deputy Joseph Storrud, a

16

white male who was accused of pointing a gun at Zanov Gomez on October 25, 2001. (Pl.'s Resp. [85] at Exs. 14-20.) IA commenced an investigation into the incident on the same day that it occurred, interviewing both Gomez and Storrud. (*Id.* at Ex. 14.) Gomez stated that he was engaged in a minor altercation outside of Gants Food Store in Marietta, when Deputy Storrud drove up, got out of his car, and drew a handgun from his waistband. (*Id.*) Deputy Storrud confirmed that he had stopped outside of Gants to stop a fight between two men. (*Id.* at Ex. 15.) He admitted that he pulled up his shirt and displayed his gun to the men. (*Id.*) He also admitted that he had been drinking at the time. (Pl.'s Resp. [85] at Ex. 15.)

Following the investigation, Major J.C. Burns advised Storrud that he was recommending dismissal based on the October 25, 2001 incident. (*Id.* at Ex. 17.) Based on the results of the investigation, Chief Deputy Warren terminated Storrud's employment on November 2, 2001. (*Id.* at Ex. 27.) Arguably, Deputy Shorrud's misconduct was less serious than plaintiff's, and certainly was no worse. Even so, he received exactly the same discipline as plaintiff.

Plaintiff also cites incidents involving Deputy Billy Walker and Deputy Steven Johnson, two white males who were accused of misusing

17

their weapons but who were not terminated.[3] (Pl.'s Resp. [85] at 17-25.) However, neither Walker nor Johnson's case is sufficiently similar to plaintiff's to show disparate treatment. In Deputy Walker's case, two Philly Connection employees accused Walker of displaying or waving a "black revolver" outside of the store. (Warren Dep. at Exs. 6-8.) Apparently the Philly Connection employees had argued on the telephone with Walker's daughter, a former Philly Connection employee. (*Id.*) Officers from the Hiram Police Department, who responded to the incident, went to Walker's house to question him. (*Id.*) Walker allowed the officers to search his car and house. (*Id.*) When the search did not reveal a black revolver, the officers went back to the Philly Connection and spoke with the employees again. (*Id.*) During the second interview, one of the employees retracted his statement about the gun, and the other employee substantially changed his statement. (Warren Dep. at Exs. 6-8.)

There are several important distinctions between the incident

---

[3] Plaintiff cites numerous other examples of white employees who were engaged in conduct ranging from having sex with a colleague to spraying an inmate with OC spray. (Pl.'s Resp. [85] at 17-25.) None of these incidents are sufficiently similar to show disparate treatment, as they do not involve the misuse of a firearm and dishonesty during an IA investigation. *See Rioux,* 520 F.3d at 1280. Although plaintiff also claims that he saw other white officers misuse their firearms on various occasions, there is no evidence that either Hutson or Warren was aware of these incidents.

· 72A
:v.8/82)

involving Deputy Walker and the incident involving plaintiff.  First, the allegation against Walker was that he displayed or waved his weapon, not that he pointed it directly at another person's head in a threatening manner.  Second, the factual basis for the allegation against Walker was much weaker, as one of the witnesses to the incident retracted his statement, and a search of Walker's home and car did not uncover a gun that matched the description of the gun that Walker had supposedly displayed outside the Philly Connection. Finally, there was no indication that Walker was untruthful during the investigation into the incident.

The incident involving Deputy Johnson is similarly unhelpful to plaintiff's case.  On May 23, 2003, Johnson authorized his fifteen year old foster daughter to permit two male teenagers into his home. (Warren Dep. at Ex. 15.)  After hearing the teenagers make several sexual comments to his daughter, Deputy Johnson confronted the boys, who ran from the house.  (*Id.*)  In the front yard, Johnson displayed his badge and identified himself as a deputy sheriff.  (*Id.*)  During the confrontation, Johnson drew his gun from his pocket and held it by his side.  (*Id.*)  Johnson advised the boys that they were failing to follow the directions of a law enforcement officer and would face charges.  (*Id.*)  The boys then got into their car and left Johnson's residence.  (Warren Dep. at Ex. 15.)  Following an IA investigation into the incident, Johnson was suspended for one day without pay.

19

(*Id.*)

Again, there are several notable distinctions between Deputy Johnson's and plaintiff's misconduct. Importantly, Johnson did not point his gun at the teenagers in a threatening manner, but merely held it by his side during the confrontation. Moreover, there is no indication that Johnson was untruthful during the investigation into the incident. Plaintiff's untruthfulness, in addition to his threatening use of his firearm, were the primary reasons cited by Warren for his decision to terminate plaintiff's employment. (*Id.* at Ex. 28.)

Misuse of a firearm by pointing it at another person, and untruthfulness during an IA investigation, are extremely serious offenses for a law enforcement officer. (DSMF [70] at ¶ 42.) There is no evidence of any deputy of the Cobb County Sheriff's Office, white or black, who has been retained in employment after committing an offense involving the unlawful pointing of a firearm at another person and then lying about it. (*Id.* at ¶ 43.) Accordingly, defendants are entitled to summary judgment on plaintiff's § 1981 discriminatory termination claim.

2. Plaintiff has not produced any evidence to rebut defendants' legitimate, non-discriminatory reasons for terminating his employment.

Even assuming that plaintiff could establish a *prima facie* case of race discrimination, defendants still would be entitled to summary

20

judgment on his § 1981 claim. Under the *McDonnell Douglas* framework, once plaintiff has established a *prima facie* case of retaliation, the burden of production shifts to defendant to articulate a legitimate, non-retaliatory reason for his termination. *McDonnell Douglas*, 411 U.S. at 802. Defendants easily meet this "exceedingly light" burden. *See Perryman v. Johnson Prods. Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir. 1983). They contend, with substantial support in the record, that plaintiff was terminated because he threatened another person with his gun and then lied about the incident during the subsequent investigation. (Defs.' Mot. for Summ. J. [70] at 10-17.)

At this stage, to survive summary judgment, plaintiff must present evidence sufficient to permit a reasonable factfinder to conclude that the reason given by defendants was not the real reason for his termination, but merely a pretext for discrimination. *Harrell v. Alabama Dep't of Educ.,* 2009 WL 1510276 *1 (11th Cir. 2009). A plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the reason. *Id.* at *2. As long as the proferred reason is one that might have motivated a reasonable employer, plaintiff must "meet that reason head on and rebut it." *Id.* This, plaintiff has failed to do. For this additional reason, defendants' motion for summary judgment on plaintiff's § 1981 discriminatory termination claim should be **GRANTED**.

21

## III. **Plaintiff's § 1981 Retaliation Claim**

The Eleventh Circuit has concluded that § 1981 supports a cause of action for "retaliation [based on] a plaintiff's opposition to race discrimination." *Tucker v. Talladega City Sch.*, 171 Fed. Appx. 289, 294 (11th Cir. 2006)(citing *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998)). *See also, Webster v. Fulton County*, 283 F.3d 1254, 1256 (11th Cir. 2002)(applying § 1981's retaliation proscription outside the employment context). Plaintiff claims that he complained to Warren at some point in July, 2002 about disparate treatment and discrimination within the Sheriff's Office. (Pl.'s Resp. [85] at 28-29.) According to plaintiff, his termination shortly thereafter is evidence of retaliation based on his opposition to race discrimination. (*Id.*)

Plaintiff's failure to present any evidence of pretext to rebut defendants' legitimate, non-discriminatory reason for his termination is fatal to his retaliation claim. Again, plaintiff presents no direct evidence of retaliation. Accordingly, the Court applies the *McDonnell Douglas* analysis. *See Snowden v. City of Daphne*, 283 Fed. Appx. 693, 695 (11th Cir. 2008)(applying the *McDonnell Douglas* analysis to plaintiff's retaliation claim).

A plaintiff can establish a *prima facie* case of retaliation by showing that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) a causal connection

22

exists between the two events. *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir. 1998). Assuming plaintiff can meet these requirements, defendants have articulated a legitimate reason for plaintiff's termination that is well-supported in the record, namely, an IA investigation concluding that plaintiff had threatened Earnest Hampton by pointing a gun at his head, and that he had then lied about the incident during the investigation. (Defs.' Mot. for Summ. J. [70] at 10-17.)

Under the *McDonnell Douglas* framework, plaintiff must at this stage produce some evidence that defendant's articulated legitimate reason for his termination is "unworthy of credence," and a pretext for retaliation, in order to survive summary judgment. *Snowden,* 283 Fed. Appx. at 695. *See also Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001)(outlining each stage of the *McDonnell Douglas* framework in the context of a retaliation claim). As discussed above, he has not done so. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990)(noting that a plaintiff must present "concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext") and *Jackson v. Alabama State Tenure Comm'n,* 405 F.3d 1276, 1290-91 (11th Cir. 2005)(affirming summary judgment where plaintiff failed to point to evidence showing that the reasons given for her termination were false). Accordingly, defendants are entitled to summary judgment on

23

plaintiff's retaliation claim.

## IV.  **Plaintiff's § 1981 Claim for Racial Harassment**

In his last remaining claim, plaintiff alleges that he suffered racial harassment while working at the Cobb County Sheriff's Office. (Pl.'s Resp. [85] at 36-38.)  Workplace racial harassment is actionable under § 1981. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 383 (2004). To prevail on his hostile work environment claim, plaintiff must show that he was subjected to racial harassment sufficiently "severe or pervasive" to alter the conditions of his employment and create an abusive working environment.[4] *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).

It is highly questionable whether the isolated incidents plaintiff cites show "severe or pervasive" racial harassment. (Pl.'s Decl. [85] at ¶¶ 6-12, 18, 26, 28.)  Most of plaintiff's allegations involve offensive statements that were overheard by, but not directed towards, plaintiff. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)(a hostile work environment generally does not arise from the "mere utterance of an . . . epithet which engenders offensive feelings in an employee"). There is no evidence that the atmosphere in the Cobb County Sheriff's Office was "charged with racial

---

[4] The elements of a hostile work environment claim under § 1981 are the same as the elements of a similar claim under Title VII, 42 U.S.C. 2000e-2, *et seq. Standard,* 161 F.3d at 1330.

24

hostility.'" *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995)(quoting *EEOC v. Beverage Canners, Inc.,* 897 F.2d 1067, 1068 (11th Cir. 1990)).

In any case, plaintiff's racial harassment claim is barred by the statute of limitations. As discussed in the Court's previous order, plaintiff's § 1981 race discrimination claims are subject to a four-year statute of limitations. *Baker,* 531 F.3d at 1338-39. Plaintiff was placed on paid leave beginning July 31, 2002. (DSMF [70] at ¶ 24.) He was terminated on August 12, 2002, before he had an opportunity to report back to work. (*Id.* at ¶ 36.) Thus, any alleged workplace harassment that plaintiff suffered ceased on July 31, 2002. Plaintiff did not file this lawsuit until August 11, 2006, over four years later. (Compl. [1].) Accordingly, defendants are entitled to summary judgment on plaintiff's § 1981 racial harassment claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion for Summary Judgment [70], **GRANTS** plaintiff's Motion for Leave to File Original Deposition Transcripts in Paper Form [83], **GRANTS** defendants' Motion for Extension of Time to File Reply [86], **DENIES as moot** defendant Hutson's Motion to Dismiss [63], and **GRANTS** Plaintiff'S Motion for Order and Direction Regarding Filing of Sur-

25

Reply [93].

     SO ORDERED, this _4_ day of February, 2010.

                                  JULIE E. CARNES
                                  CHIEF UNITED STATES DISTRICT JUDGE

26